IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CAMPION, | : | No.  4:04-CV-2580 |
| Plaintiff | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| NORTHEAST UTILITIES, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

February 24, 2009

This matter is before the Court on the Motion to Dismiss (Doc. 39) of

defendants Northeast Utilities ("NU"), NU Enterprises, Select Energy ("Select",

and Northeast Generations Services ("NGS"), which seeks dismissal of plaintiff

Michael Campion's claim under the anti-retaliation provision of the False Claims

Act ("FCA") on the grounds that it is barred by the statute of limitations and that

the complaint fails to state a claim upon which relief can be granted.  For the

reasons set forth below, the Court finds that Campion's claim is not time-barred,

but that he has indeed failed to state a claim.  Therefore, the motion will be

granted, and this action will be dismissed.

## I.     STANDARD OF REVIEW

The defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff

Michael Campion's complaint as time-barred and for failure to state a claim upon

which relief can be granted.  In considering a motion to dismiss pursuant to Rule

12(b)(6), courts "accept all factual allegations as true, construe the complaint in the

light most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."   *Phillips v. County*

*of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings*

*Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain

a short and plain statement of the claim showing that the pleader is entitled to

relief, "in order to give the defendant fair notice of what the claim is and the

grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct.

1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Id.* at 1965.  A plaintiff must make

"a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965, 1969 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## II.   BACKGROUND

Campion filed his original complaint in this action under seal on December 1, 2004, asserting *qui tam* and retaliation claims under the FCA. (Doc. 1.) Service

of the complaint was delayed for an extended period of time to give the United States the opportunity to decide whether to intervene in the action.  On December 4, 2007, the United States filed a notice of election to decline intervention.  (Doc. 25.)  On December 10, 2007, the Court issued an order unsealing the complaint and directing its service on the defendants.  (Doc. 26.)  However, on March 6, 2008, Campion filed an amended complaint which withdrew his *qui tam* claims and proceeds with only his retaliation claim under 31 U.S.C. § 3730(h).  (Doc. 27-3.)  In support of that claim, Campion alleges the following.

From 1995 to March 2004, Campion was employed by various entities as a boiler operator and eventually lead heating and cooling systems mechanic at the Tobyhanna Army Depot ("TAD") in Tobyhanna, Pennsylvania.  (Compl. ¶ 5.)  Relevant for purposes of the present motion, from June 2002 to March 2004, Campion was employed by defendant NGS.  (*Id.* at ¶¶ 5, 134.)  NGS is a subsidiary of defendants NU and NU Enterprises.  (*Id.* at ¶¶ 10, 12.)

In 1999, HEC, Inc., which was later known as defendant Select, and which is also a subsidiary of NU and NU Enterprises, entered into a contract with the federal government to construct, operate, and maintain a heating system and install a lighting system at TAD.  (*Id.* at ¶ 8.)  Select later entered into contracts with the federal government to operate and maintain the cooling system at TAD and replace

4

steam traps throughout TAD. (*Id.* at ¶¶ 17, 18.) At various times, Select

subcontracted some of its obligations under these contracts to other entities,

including to NGS from June 2002 to June 2004. (*Id.* at ¶¶ 9, 11.)

Campion alleges numerous false claims by NGS and other subcontractors of

Select in the performance of these contracts, including the hiring of unqualified

employees, unperformed work, double billing, falsified time sheets, and theft of

equipment. (*See id.* at ¶¶ 23-132.) Campion alleges that he "complained, and tried

to complain, about many of the allegations discussed above." (*Id.* at ¶ 135.)

Campion "tried to meet" with NGS and Select supervisor Robert Gunderson;

however, Gunderson informed fellow supervisor William Cannon, one of the main

culprits of the alleged misconduct, of Campion's phone calls. (*Id.*) Cannon then

"berated and mistreated" Campion because Campion "had gone over his head."

(*Id.* at ¶ 136.) Nevertheless, Campion eventually met with Gunderson and notified

him "of some of the allegations above, including but not limited to falsification of

time sheets." (*Id.* at ¶ 138.)

Campion alleges that as a result of these complaints, he "was eventually

demoted to a boiler operator with no management authority." (*Id.* at ¶ 139.)

Campion also alleges that as a result of these complaints, Gunderson stated

publicly that Campion "either had a drug or alcohol problem, or suffered from a

learning disability", and that he "was physically assaulted at TAD by NGS employee Chuck Hazelton."  (*Id.* at ¶¶ 140-41.)

Campion states that as a result of the assault and demotion, he hired an attorney who "reported improprieties at TAD to NU" and requested an investigation into Campion's treatment by Cannon, NGS, and Select.  (*Id.* at ¶¶ 142-43.)  NU reported that it was investigating the matter, but never told Campion or his attorney the results of the investigation.  (*Id.* at ¶ 144.)  Campion states that shortly thereafter, he "was accused of removing a generator from the work site" even though he had previously been authorized to remove it for his personal use and even though it was common practice at TAD to permit employees to remove equipment for personal use.  (*Id.* at ¶ 145.)  Campion further states that, during leave under the Family Medical Leave Act to care for his sick wife, he was terminated, the only reason given being "just cause."  (*Id.* at ¶ 146.)  Campion alleges that the true reason for his termination was "his actions in revealing the frauds that were occurring at TAD."  (*Id.* at ¶ 147.)  The sole count of Campion's complaint asserts that the discrimination, demotion, and eventual termination he sustained violated the anti-retaliation provision of the FCA, 31 U.S.C. § 3730(h).

## III.   DISCUSSION

The defendants move to dismiss Campion's complaint on the grounds that his claim is time-barred and that he has failed to state a claim upon which relief can be granted.  Both grounds are discussed in turn below.

### A.   Statue of Limitations

The defendants first argue that Campion's complaint must be dismissed as time-barred.  Campion's sole claim is asserted under the anti-retaliation provision of the FCA, 31 U.S.C. § 3730(h).  In *Graham County Soil and Water Conservation District v. Wilson*, 545 U.S. 409, 422 (2005), the Supreme Court held that the FCA does not provide an express statute of limitations for a retaliation claims under § 3730(h), and therefore, courts must "borrow" the most closely analogous state limitations period.[1]  The question thus becomes what is the most closely analogous Pennsylvania statute of limitations.

---

[1] Although the Supreme Court's decision in *Graham County* was handed down after Campion filed his complaint in this action, that holding is retroactively applicable to this case. *See, e.g.*, *United States ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 529 & n.23, 24 (D. Md. 2006) (quoting *Harper v. Virginia Dep't of Tax.*, 509 U.S. 86, 97 (1993)) ("When the Supreme Court applies a rule of federal law to the parties before it, 'that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.' Accordingly, this Court must apply the *Wilson* rule to [plaintiff's] complaint because it was pending when *Wilson* was decided.").

The defendants argue that the most closely analogous state statute of limitations is that found in Pennsylvania's Whistleblower Law, which provides that "[a] person who alleges a violation of this act may bring a civil action ... within 180 days after the occurrence of the alleged violation."  43 Pa. C.S. § 1424(a). Despite the use of the permissive "may," the Whistleblower Law's "180-day time limit is mandatory, and courts have no discretion to extend it."  *O'Rourke v. Pa. Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa. Commw. Ct. 1999) (citing *Perry v. Tioga County*, 649 A.2d 186, 188 (Pa. Commw. Ct. 1994), *appeal denied*, 655 A.2d 995 (Pa. 1995)).  Campion was terminated in March 2004, and therefore, if the Whistleblower Law's limitations period applies, his complaint must have been filed, at the latest, by September 27, 2004, to be timely.  Campion did not file his complaint in this action until December 1, 2004, and therefore, if the 180-day limitations period applies, his complaint is untimely.

Campion argues that the Whistleblower Law does not provide the most closely analogous state statute of limitations, but rather that the statute of limitations for wrongful discharge actions should be applied.  Under Pennsylvania law, an action for wrongful discharge is subject to the two-year personal injury "catchall" statute of limitations in 42 Pa. C.S.A. § 5524(7).  *See Gates v. Servicemaster Comm. Serv.*, 631 A.2d 677, 679 (Pa. Super. Ct. 1993); *Anderson v.*

*Consol. Rail Corp.*, 297 F.3d 242, 251 (3d Cir. 2002) (citing *Raleigh v. Westinghouse Elec. Corp.*, 550 A.2d 1013, 1014 (1988), *appeal denied*, 563 A.2d 499 (Pa. 1989)).  If the two-year personal injury catchall statute of limitations applies, Campion's complaint, which was filed approximately 240 days after his termination, is timely.

In *Graham County*, the Supreme Court provided a list of "likely analogous" statutes of limitations for each state, with the caveat, however, that "these are only the likely candidates for analogous state statutes of limitations; it may well not be an exhaustive or authoritative list of the possibilities."  545 U.S. 419 n.3; *see also id.* at 422 (stating "[t]he appropriate state statute of limitations to borrow ... is not within the scope of the question we granted certiorari to decide").  Courts have not felt constrained by this list of suggested analogous limitations periods and have found unlisted state statutes of limitations to be the most analogous to a § 3730(h) claim in a particular case.  *See, e.g.*, *United States ex rel. Nichols v. Omni H.C., Inc.*, C.A. No. 4:02-CV-66, 2008 WL 906426, at *2 (M.D. Ga. Mar. 31, 2008); *Rutz v. Village of River Forest*, C.A. No. 03-C-1907, 2007 WL 3231439, at *4 (N.D. Ill. Oct. 25, 2007); *Lehoux v. Pratt & Whitney*, C.A. No. 05-210-P-S, 2006 WL 346399 (D. Me. Feb. 8, 2006).  Even if the *Graham County* list of state statutes of limitations were controlling, it would not answer the question in this

case.  As the "likely analogous" Pennsylvania statute of limitations, the Court in

*Graham County* listed both the two-year tort catchall limitations period of §

5524(7) and the 180-day limitations period of the Whistleblower Law.  545 U.S.

419 n.3.  The parties' arguments in this case rest on both horns of this dilemma.

With no clear answer provided by controlling precedent, the Court must

determine the appropriate statute of limitations to borrow.  The Supreme Court has

established a formula for making this determination.  *See Haggerty v. USAir, Inc.*,

952 F.2d 781, 784-85 (3d Cir. 1992); *In re Data Access Sys. Sec. Litig.*, 843 F.2d

1537, 1542 (3d Cir. 1988).  The first step is to "determine whether all claims

arising out of the federal statute should be characterized in the same way, or

whether they should be evaluated differently depending upon the varying factual

circumstances and legal theories presented in each individual case."[2]  *Data Access*

*Sys.*, 843 F.2d at 1542 (citing *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*,

---

[2] The Supreme Court's original formulation of the inquiry includes an initial step in which a court must determine whether state or federal law controls the characterization of the claim at issue.  *See Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co.*, 792 F.3d 341, 345 (3d Cir. 1986), *aff'd sub nom. Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987), (citing *Wilson*, 471 U.S. at 268).  The Supreme Court has subsequently recognized, however, that "[t]he characterization of a federal claim for purposes of selecting the appropriate statute of limitations is generally a question of federal law."  *Agency Holding*, 483 U.S. at 147; *see also Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F3d 217, 220 (3d Cir. 2004) ("Determining the statute of limitations period for activity governed by a federal statute is a question of federal law.").  Moreover, in this case, the Court has found no decision of the Pennsylvania Supreme Court or any lower Pennsylvania court purporting to characterize an FCA retaliation claim under Pennsylvania for limitations purposes.  *See Malley-Duff*, 792 F.3d at 346.

483 U.S. 143, 147 (1987); *Wilson v. Garcia*, 471 U.S. 261, 268 (1985)).  "Once

this characterization is made, the next inquiry is whether a federal or state statute

of limitations should be used."  *Id.*  Finally, the court "must characterize the

essence of the claim in the pending case" and decide which statute provides the

appropriate limiting principle.  *Malley-Duff*, 792 F.3d at 345 (quoting *Wilson*, 471

U.S. at 268).

As to the first step, characterization of the claim "entails an analysis of

whether claims under a statute are enough alike so that a uniform statute of

limitations should be applied to all of them, at least on a state-by-state basis."

*Haggerty*, 952 F.2d at 784.  Thus, if claims under the federal statute at issue are

sufficiently similar, a court should "look[] to the federally-created cause of action

for a broader analogy that could encompass all claims brought thereunder."

*Malley-Duff*, 792 F.3d at 346-47.  For example, in *Haggerty*, the Third Circuit held

that all claims under the Employee Protection Program of the Airline Deregulation

Act of 1978 must be subject to a uniformly borrowed statute of limitations because

they "all arise out of a similar factual matrix" involving the same groups of

potential plaintiffs and defendants.  952 F.2d at 785-86.  On the other hand, if

claims under the federal statute at issue are varied, a court should "pars[e] the

particular factual allegations and legal theories supporting an individual federal

claim" to determine the appropriate limitations period.  *Malley-Duff*, 792 F.3d at

346-47.  For example, in *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1180-81 (3d Cir.

1992), the Third Circuit held that three different Pennsylvania statutes of

limitations applied to the plaintiffs' factually and legally distinct ERISA claims for

past due benefits; bargained-for, but not yet due benefits; and benefits that fit into

neither category.  Where claims under the federal statute at issue are *too* varied,

however, a prophylactic uniform characterization of the statute may be necessary

"to avoid intolerable 'uncertainty and time-consuming litigation'", which results

when almost every claim under a statute can be favorably analogized to more than

one cause of action and potential litigants can never know with confidence what

the applicable statute of limitations will be.   *Agency Holding*, 483 U.S. at 150

(quoting *Wilson*, 471 U.S. at 272).  For example, in *Wilson*, the Supreme Court

held that because claims under the civil rights statute 42 U.S.C. § 1983 "encompass

numerous and diverse topics and subtopics" and given the unique and broad nature

of the remedy created by § 1983, "federal interests in uniformity, certainty, and the

minimization of unnecessary litigation" supported the conclusion that all § 1983

claims should be characterized as involving claims for personal injury, and a

state's personal injury statute of limitations should be applied to all § 1983 claims

regardless of the specific factual allegations or legal theories in a case.  471 U.S. at 271-75.

The statute at issue here, 18 U.S.C. § 3730(h), created "a private cause of action for an individual retaliated against by his employer for assisting an FCA investigation or proceeding."  *Graham County*, 545 U.S. at 412.  The whistle-blower provision of the FCA provides in relevant part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.  Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h).  "Congress enacted § 3730(h) to encourage any individuals knowing of Government fraud to bring that information forward," and "§ 3730(h) broadly protects employees who assist the government in prosecuting and investigating False Claims Act violations" from harassment, demotion, loss of employment, and any other form of retaliation.  *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001) (citation omitted).

To state a claim under § 3730(h), a plaintiff must show that (1) he engaged in protected conduct and (2) that he was discriminated against because of his protected conduct. *Id.* Every FCA retaliation claim will share these two basic premises, but these essential elements are deceptively simple. The language of the statute itself encompasses a diverse array of conduct. Section 3730(h) prohibits retaliation in any of its varied forms, including discharge, demotion, suspension, threat, harassment, and "any other manner." The statute also protects a wide variety of conduct, "including investigation for, initiation of, testimony for, or assistance in" an FCA claim, and "[d]etermining what activities constitute 'protected conduct' is a fact specific inquiry", *Hutchins*, 253 F.3d at 187. Moreover, although a retaliation plaintiff need not develop a winning *qui tam* action, the plaintiff's protected conduct must have some "nexus" with the, at least potential, FCA claim to be furthered by such conduct. *Hutchins*, 253 F.3d at 187. The potential predicate FCA violations "encompass numerous and diverse topics and subtopics", *Wilson*, 471 U.S. at 273. *See* S. Rep. No. 99-345, at 9, reprinted in 1986 U.S.C.C.A.N. 5266, 5274 (stating "[t]he False Claims Act is intended to reach all fraudulent attempts to cause the Government to pay our sums of money or to deliver property or services. Accordingly, a false claim may take many forms...." and collecting cases demonstrating the diverse applications of the FCA).

Given the wide variety of retaliation prohibited by § 3730(h) and conduct

protected by the statute, a claim thereunder might be analogized to a tort action for

wrongful discharge[3]; a whistleblower cause of action[4]; statutory causes of action

prohibiting retaliation against employees for engaging in protected activities[5];

common law torts such as assault, battery, intentional infliction of emotional

distress, and defamation[6]; or negligence theories such as negligent hiring, retention,

training, supervision, and referencing[7].  In certain circumstances a claim under §

3730(h) might be analogized to more narrow causes of action such as a contract

---

[3] *See, e.g.*, *Shick v. Shirey*, 716 A.2d 1231 (Pa.1998); *Weaver v. Harpster*, 885 A.2d 1073 (Pa. Super. Ct. 2005).  The limitations period for such a claim is two years.  *See* 42 Pa. C.S.A. § 5524(7).

[4] 43 Pa. C.S. § 1421, *et seq.*  The limitations period for such a claim is 180 days.  42 Pa. C.S. § 1424(a).

[5] *See* 42 Pa. C.S. § 955(d); 43 Pa. C.S. § 336.8(a).  To bring a retaliation claim under the Pennsylvania Human Relations Act, a plaintiff must file an administrative complaint with the Pennsylvania Human Rights Commission within 180 days of the alleged act of retaliation.  *See* 43 Pa. C.S. § 959(h); *Uber v. Slippery Rock Univ.*, 887 A.2d 362 (Pa. Commw. Ct. 2005).

[6] For example, in this case, the plaintiff alleges that he was physically assaulted and publicly humiliated in retaliation for his protected conduct.  The limitations period for defamation is one year, 42 Pa. C.S.A. § 5523(1), and the limitations period for assault, battery, intentional infliction of emotional distress is two years, *id.* at §§ 5524(1), 5524(7).

[7] These theories are implicated by the fact that a § 3730 claim lies against the plaintiff's "employer",  but not individual co-employees, supervisors, or corporate officers, *Yesudian ex rel. U.S. v. Howard University*, 270 F.3d 969, 972 (D.C. Cir. 2001); *Mruz v. Caring, Inc.*, 991 F. Supp. 701, 708-10 (D.N.J.1998), as well as the requirement that the employer have knowledge of the plaintiff's protected conduct, *Hutchins*, 253 F.3d at 186.  The limitations period for a negligence claim is two years.  42 Pa. C.S.A. § 5524(7).

action[8], an action against a municipality[9], or an action against another specific

category of defendant[10].  This multitude of potentially analogous causes of action

"inevitably breeds uncertainty and time-consuming litigation," *Malley-Duff*, 792

F.3d at 348 (quoting *Wilson*, 471 U.S. at 272), and weighs heavily in favor of

choosing a uniform statute of limitations to apply to § 3730(h).  Support for this

conclusion is found in both the Third Circuit's and the Supreme Court's decisions

to borrow a uniform limitations period for civil RICO claims in light of the

similarly "numerous and diverse topics and subtopics" covered by the statute and

the uncertainty engendered by wide variety of potentially applicable statutes of

limitations.  *See Agency Holding*, 483 U.S. at 149-50 (quoting *A.J. Cunningham*

*Packing Corp. v. Congress Fin. Corp.*, 792 F.3d 33, 337 (3d Cir. 1986) (Sloviter, J.

---

[8] For example, a plaintiff could be subject to retaliatory discharge in violation of his employment contract.  The limitations period for a contract action is four years.  42 Pa. C.S.A. § 5525.

[9] *See* S. Rep. No. 99-345 at 35, 1986 U.S.C.C.A.N. at 5300 (stating in context of § 3730(h) "'employers' should include public as well as private sector entities") *Wilkins v. St. Louis Housing Auth.*, 314 F.3d 927, 931-32 (8th Cir. 2002) (holding that a municipality is an "employer" under § 3730(h)); *see also Rutz*, 2007 WL 3231439, at *4 (applying statute of limitations for action under Illinois Local Government and Governmental Employees Tort Immunity Act to § 3730(h) claim against municipality).  The limitations period for certain actions against a municipality is six months, and a plaintiff must provide the municipality notice of the claim within six months from the date of injury or accrual of a cause of action.  42 Pa. C.S.A. § 5522.

[10] *See, e.g.*, *United States ex rel. Smart v. Christus Health*, C.A. No. C-05-287, 2009 WL 151590, at *9 (S.D. Tex. Jan. 22, 2009) (applying statute of limitations for Texas's healthcare whistleblower retaliation statute, but noting limitations may be different in cases outside the healthcare industry).

concurring)); *Malley-Duff*, 792 F.3d at 348-49.  As with the civil RICO statute in

those case and § 1983 in *Wilson*, here,"federal interests in uniformity, certainty,

and the minimization of unnecessary litigation" support the conclusion that claims

under § 3730(h) should be characterized uniformly.  *Wilson*, 471 U.S. at 275.

Further support for application of a uniform statute of limitations is found in

the broad purpose of the FCA's anti-retaliation provision and another analogous

Supreme Court decision.  In *Reed v. United Transportation Union*, 488 U.S. 319,

325-26 (1989), the Supreme Court held that the Labor-Management Report and

Disclosure Act's core purpose of protecting free speech and assembly rights in the

union context suggested that all claims arising out of § 101(a)(2) of that statute be

characterized in the same way.  The Court noted that "[t]hough § 101(a)(2) creates

personal rights, a union member vindicating those rights also serves public goals in

that he necessarily renders a substantial service to his union as an institution and to

all of its members, contributing to the improvement or preservation of democracy

within the union."  *Id.* (citation and internal punctuation omitted).  The Court

concluded that "[t]ime-consuming litigation as to the collateral question of the

appropriate statute of limitations" would interfere with these goals.  *Id.* at 326.

Similarly in this case, although a § 3730(h) plaintiff seeks to vindicate his personal

right to be free from retaliation, this action is intrinsically linked to the FCA's

broad public purpose of combating fraud against the government. *See Hutchins*,

253 F.3d at 186 (quoting S. Rep. No. 99-345 at 35, 1986 U.S.C.C.A.N. at 5299)

("'[F]ew individuals will expose fraud if they fear their disclosures will lead to

harassment, demotion, loss of employment or any other form of retaliation.'

Therefore, § 3730(h) broadly protects employees who assist the government in

prosecuting and investigating False Claims Act violations."). Costly and time-

consuming litigation over the appropriate statute of limitations is entirely

antithetical to the FCA, the core purpose of which is to save money. The

effectiveness of the FCA's anti-retaliation provision would also be impeded if

employees were forced to expend resources litigating such collateral matters,

especially when the retaliation that forms the basis for a § 3730(h) is likely to have

affected their source of income. *See Wilson*, 471 U.S. at 275 (stating § 1983's

"legislative purpose to create an effective remedy for the enforcement of federal

civil rights is obstructed by uncertainty in the applicable statute of limitations, for

scarce resources must be dissipated by useless litigation on collateral matters").

Drawn-out litigation over the "most analogous" statute of limitations could, in fact,

itself become a means continuing to retaliate against an employee.

  In conclusion, federal interests in avoiding the uncertainty and unnecessary

litigation engendered by the somewhat arbitrary process of choosing one of many

potentially analogous limitations periods, as well as consideration of the broad

public purpose of the FCA's anti-retaliation provision, compel the conclusion that

courts must select a uniform statute of limitations to apply to all claims arising

under § 3730(h).

Having determined that "a uniform limitations period is appropriate, the

court must decide whether this period should be derived from a state or a federal

source." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350,

357 (1991). The "longstanding" and "settled" practice is to borrow a limitations

period from analogous state law. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34

(1995) (citations omitted). In "rare", *Graham County*, 545 U.S. at 415, and

"limited", *Agency Holding*, 483 U.S. at 148, cases "when the state limitations

periods with any claim of relevance would frustrate or interfere with the

implementation of national policies, or be at odds with the purpose or operation of

federal substantive law, we have looked for a period that might be provided by

analogous federal law, more in harmony with the objectives of the immediate cause

of action," *North Star*, 515 U.S. at 34 (citations omitted). However, this is "'a

closely circumscribed and narrow exception to the general rule,'" and applies "only

'when a rule from elsewhere in federal law clearly provides a closer analogy than

available state statutes, and when the federal policies at stake and the practicalities

of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *Id.* at 34-35 (quoting *Reed*, 488 U.S. at 324).

The need for a uniform limitations period does not require the adoption of a federal limitations period. *See Kingvision*, 366 F3d at 222 ("There is a difference between uniformity in construing the substantive elements of a statue in order to characterize a claim for statute of limitations purposes and the next step of determining what limitations period to adopt for a particular type of claim."); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 844 n.20 (3d Cir. 1987) ("*Garcia* cannot be read ... to eliminate the "settled practice," to which the Supreme Court refers in the course of its opinion, of adopting a local time limitation which governs state actions most analogous to the federal claim when Congress has failed to provide a specific time limitation."). Nor does "the mere fact that state law fails to provide a perfect analogy to the federal cause of action ... justify the use of a federal statute of limitations." *Agency Holding*, 483 U.S. at 147-48. The conclusion that a uniform statute of limitations should apply to claims under a federal statute "ultimately may result in the selection of a single federal or of a single variety of state actions." *Lampf*, 501 U.S. at 357.

In *Graham County*, although the Court did not reach the issue of determining the appropriate statute of limitations to borrow, the Court noted that

"no party points to a reason why we should [borrow a federal limitations period], and we can think of none", and the Court held that "the most closely analogous *state* statute of limitation" applies to § 3730(h) claims.  545 U.S. at 415, 422 (emphasis added).  As in *Graham County*, the parties here have not indicated any reason to depart from the settled rule that the appropriate statute of limitations should be borrowed from state law, and therefore, the Court will look to Pennsylvania law for the most analogous limitations period.

As noted above, the defendants contend that the most closely analogous state statute of limitations is the 180-day limitations period under Pennsylvania's Whistleblower Law.  43 Pa. C.S. § 1424(a).  This argument has some surface appeal.  Section 3730(h) is also a "whistleblower" law, and both the federal and state statutes protect employees against discharge and discrimination in retaliation for reporting or assisting in the investigation of employer wrongdoing.  *Compare* 31 U.S.C. § 3730(h) *with* 43 Pa. C.S. § 1423.  The analogy ends at this level of generality, however.  The FCA's anti-retaliation provision applies broadly to any employee-employer relationship.  *See Lytle v. Capital Area Intermediate Unit*, C.A. No. 1:05-CV-0133, 2008 WL 2777403, at *1-2 (M.D. Pa. July 14, 2008); *see also* S. Rep. No. 99-345 at 34, 1986 U.S.C.C.A.N. at 5299 (stating § 3730(h)'s "definitions of 'employee' and 'employer' should be all-inclusive").  On the other

hand, Pennsylvania's Whistleblower Law applies only to employees of government entities. *See* 43 Pa. C.S. § 1433 (defining "employee" for purposes of the law as "[a] person who performs a service ... for a public body" and defining "public body" as specified government entities); *Holewinski v. Children's Hosp. of Pittsburgh*, 649 A.2d 712, 715 (Pa. Super. Ct. 1994); *Krajsa v. Keypunch, Inc.*, 622 A.2d 355, 359-60 (Pa. Super. Ct. 1993). Thus, Pennsylvania's Whistleblower Law affords no protection to plaintiffs like Campion. This severe limitation on the scope of the Pennsylvania Whistleblower Law precludes the conclusion that it provides the most closely analogous limitations period. Other courts have similarly concluded that state whistleblower laws of more limited scope do not provide the closest analogy to the broad anti-retaliation provision of the FCA. *See, e.g.*, *United States ex rel. McKenna v. Senior Life Mgmt., Inc.*, 429 F. Supp. 2d 695, 697-98 (S.D.N.Y. 2006); *United States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 99-100 (D. Conn. 2006).

In arguing for application of the Whistleblower Law's limitations period, the defendants rely heavily on the opinion of the court in *United States ex rel. Repko v. Guthrie Clinic, P.C.*, C.A. No 4:04-CV-1556, 557 F. Supp. 2d 522, 528-29 (M.D. Pa. 2008) (McClure, J.), which stated that "Pennsylvania's most closely analogous statue would be its whistleblower law," and cited to *Graham County* for the

proposition that the Supreme Court has found the Whistleblower Law to be state statute most closely analogous to § 3730(h).  This Court must respectfully disagree with our colleague's decision in *Repko*.  As an initial matter, and as Campion points out, the issue of the appropriate statute of limitations was not fully addressed in that case, as the plaintiff there had abandoned his retaliation claim.  *See id.* at 528.  Moreover, as stated above, the Supreme Court in *Graham County* did not hold that the Whistleblower Law provides the most closely analogous limitations period.  The Court merely provided a list of "likely analogous" statutes of limitations, explicitly noting that "these are only the likely candidates for analogous state statutes of limitations; it may well not be an exhaustive or authoritative list of the possibilities."  *Graham County*, 545 U.S. 419 n.3.  In addition, the Court's list of "likely candidates" included both the 180-day limitations period of the Whistleblower Law and the two-year personal injury catchall limitations period of § 5524(7).  *Id.*  For the reasons discussed above, the Court concludes that the Whistleblower Law does not provide the most closely analogous limitations period to be applied uniformly to all § 3730(h) claims.

Campion contends that Pennsylvania's limitations period for a wrongful discharge claim should be applied.  Again, this argument has some initial appeal.  Section 3730(h) prohibits retaliatory discharge, and in this case, Campion alleges

23

that he was discharged wrongfully. Several courts addressing the issue have held that the other state's common law tort claim for wrongful discharge is the most closely analogous cause of action to § 3730(h). *See Smith*, 415 F. Supp. 2d at 100-01 (so holding and collecting cases). However, the Court must reject Campion's argument for two reasons. First, wrongful discharge does not provide the most appropriate *uniform* limitations period for § 3730(h). For example, wrongful discharge would not be the most closely analogous cause of action in any case where the plaintiff was, in fact, not discharged but only "demoted, suspended, threatened, harassed, or in any other manner discriminated against" in retaliation for protected conduct. *See Rutz*, 2007 WL 3231439, at *4 (declining to apply limitations period for retaliatory discharge under Illinois law, in part, because the plaintiff "was not actually discharged in retaliation for his actions, which is an essential element of an action for retaliatory discharge"). More importantly, however, there is no cause of action under Pennsylvania law for wrongful discharge in retaliation for whistleblowing. In the very case relied on by Campion, the Pennsylvania Supreme Court reviewed the precedent concerning the common law tort of wrongful discharge and stressed the limited nature of this cause of action:

> From these cases, we glean that, as a general proposition, the presumption of all non-contractual employment relations is that it is

> *at-will* and that this presumption is an extremely strong one.   An
> employee will be entitled to bring a cause of action for a termination of
> that relationship only in the most limited of circumstances where the
> termination implicates a clear mandate of public policy in this
> Commonwealth.

*McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000).  In

that case, the court held that violation of federal law, without more, is insufficient

to overcome the strong presumption in favor of the at-will employment

relationship and create a cause of action for wrongful discharge.  *Id.* at 287-90.

Thus, in this case, Campion's allegations that the defendants violated the FCA does

not implicate any Pennsylvania cause of action.  Moreover, based on the

Pennsylvania Supreme Court's narrow construction of a wrongful discharge claim,

multiple Pennsylvania courts have held that state law does not recognize such a

cause of action based on termination in retaliation for whistleblowing.  *See, e.g.*,

*Holewinski*, 649 A.2d at 715; *Krajsa*, 622 A.2d at 358-59.  Wrongful discharge

cannot provide the most closely analogous limitations period because there is no

such cause of action under Pennsylvania law in a case such as this one.

    The Court finds that the most closely analogous state limitations period

which may be uniformly applied to claims under § 3730(h) is the residual statute of

limitations for personal injury actions, in Pennsylvania, set forth in 42 Pa. C.S.A. §

5524(7).  In numerous cases, the Supreme Court and Third Circuit have borrowed

the state limitations period for personal injury actions where, as with § 3730(h), a federal statute has no precise analogy in state law and encompasses a wide variety of potential claims. *See, e.g.*, *Reed*, 488 U.S. at 334 (holding personal injury statute of limitations applies to claims under § 101(a)(2) of the LMRDA); *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (clarifying that general or residual personal injury statute of limitations applies to § 1983 claims); *Goodman v. Lukens Steel Company*, 482 U.S. 656, 661-62 (1987) (holding personal injury statute of limitations applies to claims under 42 U.S.C. § 1981); *Wilson*, 471 U.S. at 276 (holding personal injury statute of limitations applies to § 1983 claims); *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) (holding personal injury statute of limitations applies to claims under Title II of the ADA and Section 504 of the Rehabilitation Act). The reasoning of such cases supports the same conclusion here.

Like the statutes at issue in these cases, § 3730(h) encompasses a diverse variety of conduct, and the residual personal injury statute of limitations is broad enough to be uniformly applied to the wide spectrum of potential claims. *See Owens*, 488 U.S. at 249 (rejecting application of intentional tort limitations period as too narrow). In addition, like such statutes, § 3730(h) creates a unique federal remedy, which, as discussed above, has no precise counterpart in Pennsylvania

26

law.  The residual personal injury limitations period provides a practical solution,

*see id.* at 242 (stating choice of appropriate limitations period "is essentially a

practical inquiry"), which avoids the "somewhat arbitrary" choice of one imperfect

analogy over another, *Wilson*, 471 U.S. at 272 & n.24.  At the same time, however,

claims of discharge, threats, harassment, or other manner of discrimination under §

3730(h) are generally analogous to tort claims for personal injury.  *See id.* at 277

(recognizing that although § 1983 encompasses a "broad range of potential tort

analogies, from injuries to property to infringement of individual liberty," claims

under the statute "plainly sound in tort").  Moreover, claims under § 3730(h) are

quite analogous to employment discrimination and retaliation claims under other

federal statutes to which the personal injury statute of limitations has been held to

apply.  *See, e.g.*, *Goodman*, 482 U.S. at 661-62 (applying personal injury statute of

limitations to employment discrimination claims under § 1981); *Livingston ex rel.*

*Livingston v. Borough of McKees Rocks*, 223 Fed. Appx. 84, 89 (3d Cir. 2007)

(applying personal injury statute of limitations to § 1983 claim of First

Amendment retaliation based on plaintiff's whistleblowing); *Burkhart v. Widener*

*Univ., Inc.*, 70 Fed. Appx. 52, 53 (3d Cir. 2003) (applying personal injury statute

of limitations to claims under the anti-retaliation provision of the ADA).  Finally,

although not controlling on this issue, Pennsylvania's personal injury catchall was

one of two "likely candidates for analogous state statutes of limitations" identified by the Supreme Court in *Graham County*.  545 U.S. at 419 n.3.  For these reasons, the Court holds that Pennsylvania's residual statute of limitations for personal injury actions, 42 Pa. C.S.A. § 5524(7), provides the most closely analogous statue of limitations for § 3730(h).[11]

Pennsylvania's residual statute of limitations for personal injury actions provides that such actions must be commenced within two years of injury.  42 Pa. C.S.A. § 5524(7).  Therefore, in this case, Campion's complaint, which was filed approximately eight months after his termination, is timely, and this action will not be dismissed as time-barred.

### B.    Failure to State a Claim

The defendants also move to dismiss  Campion's complaint for failure to state a claim upon which relief can be granted.  The defendants' argument proceeds on two grounds:  (1) that NU, NU Enterprises, and Select are not "employers" of

---

[11] At least one other court addressing the appropriate statute of limitations for § 3730(h), also recognizing this line of precedent and similarly presented with the lack of a precise analogy in state law, borrowed the state residuary statute of limitations for personal injury actions. *McKenna*, 429 F. Supp. 2d at 699-700; *see also United States ex rel. Marchese v. Cell Therapeutics, Inc.*, C.A. No. C06-168MJP, 2007 WL 2572347, at *3 (W.D. Wash. Sept. 6, 2007) (adopting parties' agreement with holding of *McKenna*); *United States ex rel. Smith v. N.Y. Presbyterian Hosp.*, C.A. No. 06-4056, 2007 WL 2142312, at *12 (S.D.N.Y. July 18, 2007) (agreeing with holding of *McKenna*).

Campion in the context of § 3730(h) and therefore are not proper defendants in this

action and (2) that Campion has failed to state the essential elements of a § 3730(h)

cause of action.  For the reasons discussed below, the Court finds that both of the

defendants' arguments are correct, and Campion's complaint will therefore be

dismissed.

### 1. Northeast Utilities, NU Enterprises, and Select Energy Are Not Proper Defendants

By its terms, § 3730(h) applies only to an "employee" who is retaliated

against by his or her "employer."  Neither term is defined in the statute.  However,

courts in this circuit have limited application of § 3730(h) to "the conventional

master-servant relationship as understood by common-law agency doctrine,"

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992).  *See, e.g.*,

*United States ex rel. Watson v. Conn. Gen. Life Ins. Co.*, 87 Fed. Appx. 257, 261-

62 (3d Cir. 2004); *Lytle*, 2008 WL 2777403 at *1; *Shapiro v. Sutherland*, 835 F.

Supp. 836, 837 (E.D. Pa. 1993).  "In *Darden*, the Supreme Court articulated the

test for deciding if a party qualifies as an employee."  *Watson*, 87 Fed. Appx. at

261.  According to *Darden*:

> In determining whether a hired party is an employee under the general
> common law of agency, we consider the hiring party's right to control
> the manner and means by which the product is accomplished.  Among
> the other factors relevant to this inquiry are the skill required; the source
> of the instrumentalities and tools; the location of the work; the duration
> of the relationship between the parties; whether the hiring party has the
> right to assign additional projects to the hired party; the extent of the
> hired party's discretion over when and how long to work; the method of
> payment; the hired party's role in hiring and paying assistants; whether
> the work is part of the regular business of the hiring party; whether the
> hiring party is in business; the provision of employee benefits; and the
> tax treatment of the hired party.

503 U.S. at 323-24 (quoting *Community for Creative Non-Violence v. Reid*, 490

U.S. 730, 751-752 (1989).  Under this test "'all of the incidents of the relationship

must be assessed and weighed with no one factor being decisive.'"  *Id.* at 324

(quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258 (1968)).

In this case, consideration of these factors compels the conclusion that

Campion was not an "employee" of NU, NU Enterprises, or Select for purposes of

§ 3730(h).  Campion alleges only that he was an employee of NGS.  He does not

allege that NU, NU Enterprises, or Select had any right to control his work or

assign him work, provided him tools, or had any role in his payment, the provision

of his benefits, or his tax treatment.  In fact, Campion's complaint makes clear that

these defendants were several steps removed from any employer-employee

relationship.  Campion alleges that NU and NU Enterprises are the parent

companies of Select, which contracted with the government to provide services at

TAD and which in turn subcontracted some of this work to its sister entity NGS, which in turn, employed Campion.  The relationship between Campion and NU, NU Enterprises, and Select is thus attenuated at best, and Campion's allegations provide no basis to conclude that he was an "employee" of any of these entities.

Campion argues that his claim against NU, NU Enterprises, and Select should be allowed to proceed under an "integrated enterprise" theory.  Even assuming that such a theory applies in the context of § 3730(h)[12], the allegations of Campion's complaint are insufficient to allow the conclusion that NGS, NU, NU Enterprises, and Select are an integrated enterprise.  The integrated enterprise test looks to four characteristics of affiliated corporations to determine whether they should be treated as a single employer:  "interrelation of operations; common management; centralized control of labor relations; and common ownership or

---

[12] Campion does not point to any case applying the integrated enterprise test to a claim under § 3730(h), although at least one court has applied the test to an FCA *qui tam* claim. *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, C.A. No. 01-CV-4078, 2005 WL 3542471, at *6 (D.N.J. Dec. 23, 2005), *aff'd* 495 F.3d 103 (3d Cir. 2007); *see also Thompson v. Quorum Health Res., LLC*, C.A. No. 1:06-CV-168, 2007 WL 2815972, at *3 (W.D. Ky. Sept. 27, 2007) (assuming, without deciding, that integrated enterprise test applies to § 3730(h)). Application of some veil-piercing theory to § 3730(h) claims is consistent with the definitions of "employee" and "employer" derived from common-law agency doctrine, as well as Congress's intent that those definitions "be all-inclusive," S. Rep. No. 99-345 at 34, 1986 U.S.C.C.A.N. at 5299.  However, it is certainly debatable whether the integrated enterprise test, a "labor-specific veil-piercing test, first developed by the National Labor Relations Board" and which "concern[s] itself only with those aspects of corporations having a direct relevance to labor relations," *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485-86 (3d Cir. 2001), should be applied in the context of FCA anti-retaliation claims.  *Cf. Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84-86 (3d Cir. 2003) (rejecting borrowing integrated enterprise test for Title VII purposes).

financial control."[13]  *Pearson.*, 247 F.3d at 486 (citing *Radio & Television Broad.*

*Techs. Local Union 1264 v. Broad. Serv. of Mobile*, 380 U.S. 255, 256 (1965)).

"No single factor is dispositive; rather, single employer status under this test

'ultimately depends on all the circumstances of the case.'" *Id.* (quoting *NLRB v.*

*Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)).  "The

heart of the inquiry is whether there is an absence of an arm's length relationship

among the companies." *Nesbit*, 347 F.3d at 84 (citations omitted).

In this case, Campion alleges that NU and NU Enterprises owns both NGS

and Select.  However, "[s]ole ownership alone is never enough to establish parent

liability." *Martin v. Safeguard Scientifics, Inc.*, 17 F. Supp. 2d 357, 363 (E.D. Pa.

1998) (citation omitted).  Other than the conclusory allegation that "NGS, NU, NU

Enterprises and Select are interrelated companies," Campion makes no further

factual averments from which it could be found that these entities are an integrated

enterprise.  Instead, Campion argues that the Court should "require each defendant

to prove that they have not assumed responsibility for the liabilities of NGS."

(Doc. 44-2 at 14.)  However, Campion may not shift the burden to the defendants

in this manner.  Although the integrated enterprise test is a factual question,

---

[13] As has the Third Circuit, the Court distinguishes the integrated enterprise theory
pressed by Campion from traditional alter ego or veil-piercing doctrine, *Pearson*, 247 F.3d at
484-85, as well as tests of intercorporate liability applied in other specific contexts, *see, e.g.*, *id.*
at 487-91 (WARN Act); *Nesbit*, 347 F.3d at 85-88 (Title VII).

*Pearson.*, 247 F.3d at 496, Campion must set forth in his complaint some factual allegations to support his claim and may not rely on mere legal labels and conclusions. *Twombly*, 127 S. Ct. at 1965; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) ("A court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

Campion's complaint sets forth insufficient facts to allow the conclusion that NGS, NU, NU Enterprises and Select are interrelated companies, and therefore, his claims against the latter three entities will be dismissed.

### 2.    Campion Has Failed to State a § 3730(h) Claim

The defendants also move to dismiss Campion's complaint for failure to state a claim upon which relief can be granted.  The Third Circuit has succinctly described the elements of a § 3730(h) as follows:

> A plaintiff asserting a cause of action under § 3730(h) must show (1) he engaged in "protected conduct," (i.e., acts done in furtherance of an action under § 3730) and (2) that he was discriminated against because of his "protected conduct."  In proving that he was discriminated against "because of" conduct in furtherance of a False Claims Act suit, a plaintiff must show that (1) his employer had knowledge he was engaged in "protected conduct"; and (2) that his employer's retaliation was motivated, at least in part, by the employee's engaging in "protected

33

conduct."  At that point, the burden shifts to the employer to prove the
employee would have been terminated even if he had not engaged in the
protected conduct.

*Hutchins*, 253 F.3d at 186 (citations and footnote omitted).  The defendants argue

that Campion has failed to allege that he engaged in protected activities and, even

assuming he did so, that his employer had insufficient knowledge of such

activities.

The first element of an FCA retaliation claim is that the plaintiff engaged in

protected conduct.  Section 3730(h) itself specifies that "protected conduct"

includes "investigation for, initiation of, testimony for, or assistance in an action

filed or to be filed" under the FCA.  Thus, "'protected conduct' requires a nexus

with the 'in furtherance of' prong."  *Hutchins*, 253 F.3d at 187 (quoting *McKenzie*

*v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 515 (6th Cir. 2000)).  "This inquiry

involves determining 'whether plaintiff's actions sufficiently furthered 'an action

filed or to be filed under' the False Claims Act and, thus, equate to "protected

conduct."'"  *Id.*  The protected conduct element does not require an employee to

have developed a winning qui tam action or even to actually file an FCA action, as

"[t]he False Claims Act was enacted to encourage parties to report fraudulent

activity and was intended to 'protect employees while they are collecting

information about a possible fraud, before they have put all the pieces of the puzzle

34

together.'" *Id.* at 187-88 (quoting *Yesudian*, 153 F.3d at 740). Thus, "[u]nder the

appropriate set of facts, [protected conduct] can include internal reporting and

investigation of an employer's false or fraudulent claims"; however, "[m]ere

dissatisfaction with one's treatment on the job is not, of course, enough. Nor is an

employee's investigation of nothing more than his employer's non-compliance

with federal or state regulations." *Id.* (citing *Yesudian*, 153 F.3d at 740, 742). "To

be covered by the False Claims Act, the plaintiff's investigation must concern

'false or fraudulent' claims," *Yesudian*, 153 F.3d at 740, and there must "at least be

a distinct possibility that a viable FCA action could be filed," *Dookeran v. Mercy

Hosp. of Pittsburgh*, 281 F.3d 105, 108 (3d Cir. 2002).

The second element of an FCA retaliation claim is that the plaintiff was

retaliation against because of his protected conduct. To establish this element, the

plaintiff must show, *inter alia*, that his employer had knowledge that he was

engaged in protected conduct. *Hutchins*, 253 F.3d at 186. "[T]he knowledge

prong of § 3730 liability requires the employee to put his employer on notice of the

'distinct possibility' of False Claims Act litigation." *Id.* at 188 (citations omitted).

This notice requirement "is essential because without knowledge an employee is

contemplating a False Claims Act suit, there would be no basis to conclude that the

employer harbored § 3730(h)'s prohibited motivation, i.e., retaliation," and

because it prevents nuisance suits.  *Id.* at 186 n.7, 188.  "What the employer  must

know is that the employee is engaged in protected activity – that is, in activity that

reasonably could lead to a False Claims Act case....  Merely grumbling to the

employer about job dissatisfaction or regulatory violations does not satisfy the

requirement – just as it does not constitute protected conduct in the first place."  *Id.*

(citations and internal punctuation omitted).  "[T]he inquiry into whether an

employee puts his employer on notice is whether the employee engaged in conduct

from which a fact finder could reasonably conclude that the employer could have

feared that the employee was contemplating filing a *qui-tam* action against it or

reporting the employer to the government for fraud."  *Id.*

In this case, Campion generally alleges that he "complained, and tried to

complain, about many of the allegations" contained in his complaint.  Specifically,

Campion states that he attempted to meet with NGS supervisor Robert Gunderson

"to report illegal acts of all the employees," but that Gunderson notified fellow

NGS supervisor William Cannon these attempts, and Cannon "berated and

mistreated" Campion.  Nevertheless, Campion states that he eventually met with

Gunderson and notified him "of some of the allegations ..., including but not

limited to falsification of time sheets."  Campion also states that after being

demoted and physically assaulted, allegedly as a result of these complaints, he

hired an attorney to represent him who "reported improprieties at TAD to NU" and requested an investigation into Campion's treatment by Cannon, NGS, and Select.

The Court finds that these allegations are insufficient to constitute protected activity or notice to the defendants of the distinct possibility of FCA litigation.[14] Campion's purported protected activity and notice consist entirely of telling a supervisor about "some" allegations, including falsification of time sheets, on one occasion and hiring an attorney who demanded an investigation into his treatment on the job. Campion's merely reporting his concern about mischarging the government to his supervisor does not suffice to establish that he was acting "in furtherance of" a *qui tam* action. *See Hutchins*, 253 F.3d at 188, 190, 193 (citing *Zahodnick v. Int'l Bus. Machines Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)). Campion fails to connect his activity to an FCA claim, as there is no allegation that he informed his supervisor that he was concerned that the conduct complained of was causing government funds to be lost, or that Campion gave any indication that he may ultimately initiate an FCA action or report NGS's activities to the government. *See id.* at 189-90, 193 (citing *Yesudian*, 153 F.3d at 744-45; *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th

---

[14] As the Third Circuit and others courts have noted, although the protected activity and notice requirements are separate elements of a § 3730(h) claim, "the inquiry into these elements involves a similar analytical and factual investigation." *Hutchins*, 253 F.3d at 188 n.8.

Cir. 1996); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir.

1994)).  In fact, as one of the few clear allegations regarding this issue indicates,

Campion's complaints to his employer were focused on his perceived mistreatment

at work.  This purpose, unconnected to exposing fraud or false claims against the

federal government, is insufficient to establish protected conduct or notice of the

distinct possibility of a *qui tam* claim.  *See id.* at 191 (citing *McKenzie*, 219 F.3d at

517 (holding that plaintiff's complaints to her supervisor regarding falsified time

reports did not place employer on requisite notice because the "numerous

complaints on the matter were directed at the stress from and pressure to falsify

records, not toward an investigation into fraud on the federal government")).  As

noted above, "[m]ere dissatisfaction with one's treatment on the job is not, of

course, enough.  Nor is an employee's investigation of nothing more than his

employer's non-compliance with federal or state regulations."  *Id.* at 187-88

(quoting *Yesudian*, 153 F.3d at 740).  These are precisely the allegations of

Campion's complaint, and they fail to state a § 3730(h) claim.

Campion argues that, at this stage of the proceedings, he is not required to

prove his case.  That is so.  But vague and conclusory allegations that he "tried to

complain" about "some of the allegations" and hired an attorney who "reported

improprieties" and asserted Campion's dissatisfaction with his treatment on the job

are insufficient to state a claim upon which relief can be granted under § 3730(h).

Therefore, Campion's complaint will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted.

The Court finds that Campion's complaint is not time-barred.  However, because

the allegations of the complaint are insufficient to demonstrate that Campion

engaged in protected activity or that the defendants were on notice of the distinct

possibility of FCA litigation, Campion's § 3730(h) claim will be dismissed for

failure to state a claim upon which relief can be granted.  Campion's claim against

NU, NU Enterprises, and Select is dismissed for the additional reason that he was

not an employee of these entities, and therefore, they cannot be held liable under §

3730(h).  Because the essential and unalterable allegations of Campion's complaint

are insufficient to state a claim, amendment of the complaint would be futile, and

therefore dismissal will be with prejudice.  *Phillips*, 515 F.3d at 236.  An

appropriate order will be entered.